## Penn Treaty Building Association v. Snead

*R. C. Gourley*, for defendant.

*Alexander Fried*, for plaintiff.

SLOANE, J., May 3, 1949.—There is but one issue in the case. Plaintiff-appellant puts it rightly:

"The sole question to be argued on the appeal is whether or not plaintiff can be required to accept less than the full amount of delinquent contracted payments due at any particular time, thus forfeiting the right to declare a default and proceed to foreclosure."

Plaintiff, a building and loan association, is the holder of defendant's bond and mortgage.[1] In the bond there is this provision:

"And obligor further agrees that if at any time default shall be made in the payment of the contracted monthly payments so that the total arrearages are equivalent to at least four contracted monthly payments . . ."

then the obligee may invoke the 'acceleration clause', declare the entire principal due, and proceed to foreclosure. What happened here is that defendant fell in arrears to the extent of three contracted monthly payments and tendered the amount of two of them,

---

[1] The bond and mortgage are printed, apparently the general form which an obligor-mortgagor must accept as submitted.

which plaintiff refused to accept. Thereafter the arrearages reached four monthly payments [2] and plaintiff declared a default and proceeded to foreclosure.

The question in the case is whether plaintiff was bound to accept the amount of two payments when three were due. Plaintiff contends it could not be required to do so, upon the principle that a creditor does not have to accept any sum less than the amount presently due. This contention, true as a general proposition, does not apply to the situation in this case, nor do the cases cited by plaintiff.[3] They apply where there is a single entire debt, or where the default is already complete. Generally, the situation in these cases is that failure to pay a single installment within a stated period after it becomes due constitutes a complete default under the terms of the obligation, and gives rise to the remedy provided.

The contract here clearly contemplated possible defaults in payment of installments, and the provision that this was not to result in acceleration of maturity until the arrearages reached four is obviously for the debtor's benefit and should be so construed as to be given full effect rather than to be narrowed in interpretation. To adopt plaintiff's view would mean that if a debtor fell behind one installment which he could not soon make up, he would be compelled to let it run to four and be foreclosed. It is only when the arrear-

[2] After the arrearages had reached four monthly payments, the debtor made another tender. If this were the first time tender was made, even in the full amount, it would come too late and plaintiff could not be required to accept even if proceedings had not yet been commenced: Mawhinney v. Weston, 19 Dist. R. 982.

[3] Warwick Iron Co. v. Morton, 148 Pa. 72; Atkinson, assignee, v. Walton et al., 162 Pa. 219; Wolverton's Appeal, 1 Sadler 59; Holland et al. v. Sampson, for use, etc., 4 Sadler 164; Milligan v. Marshall, 38 Pa. Superior Ct. 60, 63; Jeck v. Halpren et al., 43 D. & C. 521; 48 C. J. 594.

ages reach four that plaintiff cannot be called on to accept anything less.

The only reported case that we have found in which a situation almost exactly like the one before us was considered, is Building Association v. Hopple, 12 W. N. C. 222. There the provision was that if the borrower fell six months into arrears his shares might be declared forfeited, and the principal declared due and recoverable. Defendant fell five months into arrears and continued so by making a regular monthly payment of one month's amount. This was accepted for several years but eventually a tender of the monthly sum was refused and thereafter a default declared. Plaintiff contended, as here, that it was entitled to demand payment of the entire amount owed on the contract at the time, and was not bound to accept a partial tender.

The court, speaking through Mitchell, J., (C. P. No. 2, afterwards justice, and later chief justice of our Supreme Court) said, p. 223:

"The defendant was five months in arrears, and kept in that position by paying up each *subsequent* month's dues. The dues would seem to be new debts accruing each month, and therefore the debtor had a right to pay them separately. Again, the mortgage imposed a special and penal consequence on an arrearage of six months, and it must be considered that the intent was to permit the mortgagor to escape that result by keeping his arrearages under the stipulated amount."

There is a statement to the same effect in Warnock Building Association v. Fride et ux., 9 D. & C. 152, 153, though the precise point of this case is not raised. There plaintiff association issued execution on a bond accompanying a mortgage, which provided this could be done upon default for the space of three months after any payment became due. Defendant's payments

had been due on the first Mondays of March, April and May, 1927, and had not been paid. The first Monday of March was on the 7th, while the first Monday of May was on the 2nd. On May 3rd the association issued execution. Judge Taulane held that it was premature, that defendants would not be in default till June 7, 1927, three months after the March payment fell due, and not after May 2nd when the third payment was not met. The court added:

"It is needless to say that the defendants have the right to make any *payments on account* prior to June 7, 1927, to relieve them of default." (Italics supplied.)

Our decision therefore was that defendant's tender of the amount of two contracted monthly payments at the time three such payments were in arrears should have been received by plaintiff association.